UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| PAUL EMMANUEL, *et al.*, § | |
| § | |
| Plaintiffs, § | |
| § | |
| VS. § | CIVIL ACTION NO. 4:24-CV-04762 |
| § | |
| SKYWEST AIRLINES, INC., *et al.*, § | |
| § | |
| Defendants. § | |

## ORDER

Before the Court are Defendant SkyWest Airlines, Inc. ("SkyWest"), Delta Airlines, Inc. ("Delta"), and KLM Airline's ("KLM") (collectively, "Defendants") Motion for Summary Judgment (Doc. #41); Plaintiffs' Response (Doc. #42); and Defendants' Reply (Doc. #43). Defendants' Motion for Judgment on the Pleadings (Doc. #34) is also pending. Having reviewed the parties' arguments and applicable legal authority, the Court grants in part the Motion for Summary Judgment (Doc. #41) and denies as moot the Motion for Judgment on the Pleadings (Doc. #34).

### I. Background

#### a. Factual Background

The Court previously laid out the facts of this case in its August 7, 2025 Order. Doc. #31 at 1–3. The facts that follow are largely reproduced from that Order:

On December 21, 2022, Plaintiff Paul Emmanuel ("Mr. Emmanuel") purchased flight tickets to Nigeria for himself, his wife Theodora Paul ("Ms. Paul"), and his four minor children. Doc. #1 ¶ 1. Mr. Emmanuel, Ms. Paul, and their children (collectively, "Plaintiffs") were

scheduled to depart from Dulles International Airport in Washington, DC ("IAD") on December 23, 2022, and take several layovers on their way to Nigeria. *Id.* ¶ 14. Specifically, Plaintiffs were to travel from IAD to Detroit Metropolitan Airport in Michigan ("DTW"), from DTW to Schiphol Airport in Amsterdam, Netherlands ("AMS"), and finally from AMS to the airport in Lagos, Nigeria ("LOS"). *Id.* Plaintiffs' flight from IAD to DTW was on a Delta aircraft operated by SkyWest, and KMS was the carrier for their flights to AMS and LOS. *Id.* ¶ 9.

On December 23, 2022, Plaintiffs checked twelve suitcases through Delta at IAD. *Id.* ¶ 15. Plaintiffs' flight was then "unilaterally changed" to travel from IAD to Atlanta, Georgia, rather than to Detroit. *Id.* However, the rest of Plaintiffs' travel itinerary was to remain the same. *Id.* While Plaintiffs were preparing to board their plane from IAD to Atlanta, they were informed the flight crew had not yet arrived. *Id.* ¶ 16. Plaintiffs waited for more than three hours before Delta announced the crew had arrived and boarding would begin. *Id.* But when Plaintiffs prepared to board a second time, Delta announced the aircraft was experiencing a mechanical issue. *Id.* Plaintiffs waited three more hours before Delta announced a replacement aircraft was available. *Id.* Then, when Plaintiffs attempted to board for a third time, Delta informed passengers the flight crew had "timed out" and canceled the flight. *Id.*

On December 27, 2022, Delta offered Plaintiffs a travel plan that would involve certain members of their family departing on December 27, 2022, and other members on December 28, 2022. *Id.* ¶ 17. Plaintiffs rejected this alternative travel plan and requested a full refund on their tickets, which was denied. *Id.* ¶ 17. Plaintiffs then attempted to retrieve their suitcases, but Delta could not locate them and instructed Plaintiffs to return to the airport the following day. *Id.* ¶ 18. However, Delta was unable to locate Plaintiffs' suitcases for another seven days, at which time it instructed Plaintiffs to contact Delta's Houston office to retrieve their suitcases. *Id.*

2

Plaintiffs returned to Houston and twice attempted to retrieve their suitcases from Delta's Houston office. *Id.* ¶¶ 19–21. Finally, Plaintiffs were directed to contact KLM, who informed Plaintiffs their suitcases were in Nigeria. *Id.* ¶¶ 9–10, 21–22. After several unsuccessful attempts to recover their suitcases from KLM, Plaintiffs were finally returned ten out of their twelve suitcases. *Id.* ¶ 23. Two suitcases were never recovered, and three of the recovered suitcases returned damaged. *Id.*

### b. Procedural History

Plaintiffs filed their Complaint on February 4, 2024, bringing claims against Defendants for breach of contract and violations of the Deceptive Trade Practices Act ("DTPA"). Doc. #1. On September 2, 2025, Defendants moved for judgment on the pleadings on Plaintiffs DTPA claim. Doc. #34. On November 19, 2025, Defendants filed the instant Motion for Summary Judgment on all Plaintiffs' claims. Doc. #41. Plaintiffs responded to the summary judgment motion on December 11, 2025. Doc. #42.

## II.   Legal Standard

Summary judgment is proper if the movant demonstrates "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. "A genuine dispute as to a material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Rogers v. Bromac Title Servs., L.L.C.*, 755 F.3d 347, 350 (5th Cir. 2014) (citation omitted). "The moving party bears the initial burden on demonstrating the absence of a genuine issue of material fact." *Carnes Funeral Home, Inc. v. Allstate Ins. Co.*, 509 F. Supp. 3d 908, 915 (S.D. Tex. 2020) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). If that burden is met, "the burden shifts to the non-moving party to set forth specific facts showing a genuine issue for trial." *Id.* (citing Fed R. Civ. P. 56(e)).

3

## III. Analysis

### a. Breach of Contract

Plaintiffs bring a breach of contract claim against Defendants. Doc. #1 ¶¶ 36–39. As the parties acknowledge in their summary judgment briefing, however, the Convention for the Unification of Certain Rules for International Carriage by Air (the "Montreal Convention") "governs the international air carriage of passengers, baggage, and cargo." *White v. Emirates Airlines, Inc.*, 493 F. App'x 526, 529 (5th Cir. 2012). The Montreal Convention provides "an airline passenger's exclusive remedy." *Adegoke v. Delta Airlines, Inc.*, No. H-22-1109, 2022 WL 17363892, at *2 (S.D. Tex. Dec. 1, 2022) (quoting *White*, 493 F. App'x at 529). In particular, Article 29 of the Montreal Convention explains that "[i]n the carriage of passengers, baggage and cargo, any action for damages, however founded, whether under this Convention or in contract or in tort or otherwise, can only be brought subject to the conditions and such limits of liability as are set out in this Convention . . . ." Montreal Convention, art. 29. Accordingly, the Montreal Convention governs Plaintiffs' breach of contract action.

Within their breach of contract action, Plaintiffs allege two theories of liability. First, Plaintiffs claim Defendants are responsible for the disruption of their travel to Nigeria. Doc. #1 ¶¶ 36–37. Second, Plaintiffs claim Defendants are liable for the damage and loss of their baggage. *Id.* ¶ 38. Defendants move for summary judgment on both the delay and baggage-related claims.

#### 1. Delay Claim

Plaintiffs assert damages based on Defendants' "involuntary boarding denial" for their flight to Nigeria and "failure to offer . . . alternate transportation." Doc. #1 ¶ 37. Article 19 of the Montreal Convention governs claims involving delay, and states: "The carrier is liable for damage occasioned by delay in the carriage by air of passengers, baggage, or cargo." Montreal

4

Convention, art. 19. This same provision also provides an airline carrier with a complete defense to a delay claim, however, "if it proves that it and its servants and agents took all measures that could reasonably be required to avoid the damage or that it was impossible for them to take such measures." *Id.* Defendants invoke Article 19 in moving for summary judgment on the delay claim, arguing there is no fact issue as to whether they "took all measures reasonably necessary and available . . . to avoid damage to Plaintiffs." Doc. #41 at 8–11.

To support their argument, Defendants rely on the affidavit of Jeremiah Edwards (the "Edwards Affidavit"), a paralegal specialist for Delta who has experience with "claims regarding delays and baggage handling." Doc. #41, Ex. 1 at 2. According to the Edwards Affidavit, a significant weather event ("Winter Storm Elliot") "caused substantial disruptions to airline flights around the country." *Id.* at 3. Due to these disruptions, Delta had to rebook Plaintiffs several times. *Id.* at 3–4. Defendants contend that although their operations were hampered by Winter Storm Elliot, they nevertheless "took all measures reasonably necessary and available" to avoid damage to Plaintiffs. Doc. #41 at 11. Plaintiffs respond that there are "substantial factual gaps" as to "what alternative measures were available [to Defendants] and whether such measures were actually explored." Doc. #42 at 3.

Here, genuine issues of material fact remain. To be sure, the Court does not doubt that Winter Storm Elliot "affected travel throughout the United States." Doc. #41, Ex. 1 at 3. Nevertheless, Defendants have "the initial burden of demonstrating that there is no genuine issue of material fact" on their defense. *See F.D.I.C. v. Adam*, 18 F.3d 936, 938 (5th Cir. 1994) ("On those issues in which the movant has the burden of proof at trial, the movant has the initial burden of demonstrating that there is no genuine issue of material fact."). Defendants have not met their burden. The Edwards Affidavit does not entirely resolve whether they undertook all measures that

5

could reasonably be required to avoid damage to Plaintiffs or whether it was impossible for them to take such measures.

Plaintiffs highlight, for instance, a three-day gap between December 24 and December 26, 2022 from which there is no evidence of Defendants' action or inaction. Doc. #42 at 9. The Edwards Affidavit describes Delta's efforts to rebook Plaintiffs on their flight to AMS on December 24, 2022. Doc. #41, Ex. 1 at 4. But it does not indicate whether Defendants explored other rebooking options during the two days that followed or explain why Delta waited until December 27, 2022 to offer Plaintiffs alternative travel to Nigeria. Similarly, the Edwards Affidavit explains that the AMS flight was cancelled when "commuting crew members were unable to reach" Atlanta but fails to indicate "whether local crew were available or what efforts were made to secure alternative crew." Doc. #41, Ex. 1 at 4; Doc. #42 at 9.

Defendants provide cases from other district courts to demonstrate their compliance with Article 19. *E.g.*, *Bernfeld v. US Airways, Inc.*, No. 14-cv-5573, 2016 WL 1583057 (N.D. Ill. Apr. 20, 2016); *Helge Mgmt., Inc. v. Delta Air Lines, Inc.*, No. 11-10299, 2012 WL 2990728 (D. Mass. July 19, 2012). But the facts of the cases Defendants cite are different from the evidence before this Court. In *Bernfeld*, for instance, the airline carrier submitted evidence that "no suitable aircraft were available" to avoid delay and "the only remaining option was to rebook" the plaintiffs. *Bernfeld*, 2016 WL 1583057, at *2. Likewise, in *Helge*, the court noted that "[a] replacement crew was not available" and "[there] were no feasible alternative flight accommodations" available. *Helge*, 2012 WL 2990728, at *4. Whether the same was true during the delay in *this* case remains unanswered. As such, summary judgment is not warranted on Plaintiffs' delay claim.

### 2. Baggage Claims

Next, Plaintiffs allege Defendants are liable for the damage and loss of their baggage. Doc.

#1 ¶ 38. These claims fall likewise fall under the Montreal Convention, which provides that a "carrier is liable for damage sustained in case of destruction or loss of, or of damage to, checked baggage' if the loss or damage took place on board the aircraft or 'during any period within which the checked baggage was in the charge of the carrier.'" *Bassam v. Am.*, 287 F. App'x 309, 313 (5th Cir. 2008) (quoting Montreal Convention, art. 17(2)). The Court first addresses Plaintiffs' damaged-baggage claim before moving to their claim for lost baggage.

### i. Damaged Baggage

For claims involving damaged baggage, the Montreal Convention requires that "the person entitled to delivery . . . complain to the carrier forthwith after the discovery of the damage, and, at the latest, *within seven days* from the date of receipt in the case of checked baggage." Montreal Convention, art. 31(2) (emphasis added). Defendants argue the evidence shows Plaintiffs' damaged-baggage claim is untimely. Doc. #41 at 12–14.

Because the non-movant Plaintiffs bear the burden to prove the timeliness of their damaged-baggage claim, Defendants may satisfy their summary judgment burden "by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support" Plaintiffs case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Defendants have met their burden by showing they did not receive written notice of the damaged bags until January 26, 2024, over two years after notice was due. Doc. #41, Ex. 1 at 5–6.

Accordingly, the burden shifts to Plaintiffs to "go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Stults v. Conoco, Inc.*, 76 F.3d 651, 656 (5th Cir. 1996) (citing *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995)). "To meet this burden, [Plaintiffs] must 'identify specific evidence in the record and articulate the "precise manner" in which that evidence support[s] [their] claim[s].'" *Stults*, 76 F.3d at 656 (citing

*Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994)). The evidence Plaintiffs cite does not demonstrate the timeliness of their damaged-baggage claim. They argue, for instance, that emails they sent demonstrate Defendants were on written notice of the damaged baggage in January of 2023. Doc. #42 at 10. But Plaintiffs' January 16, 2023 email was sent to ASAP Tickets, who is not a party in this case. Doc. #42, Ex. 1 at 6. And their email to Delta concerned ticket refunds, not baggage. *Id.* at 2, 4. Based on the summary judgment evidence, then, the damaged-baggage claim is untimely and should be dismissed.

### ii. Lost Baggage

Similarly, Plaintiffs assert they are "entitled to at least $3,800 for each of the two suitcases that were lost." Doc. #1 ¶ 38. Defendants argue this claim should likewise be dismissed because Plaintiffs cannot prove damages. Doc. #41 at 15.

Whether styled as a breach of contract claim or a claim for relief under the Montreal Convention, Plaintiffs must prove the damages they suffered because of their lost baggage. *See Sport Supply Grp., Inc. v. Columbia Cas. Co.*, 335 F.3d 453, 465 (5th Cir. 2003) ("The plaintiff bears the burden of demonstrating that he suffered a loss as a result of the breach [of contract."); *Quevedo v. Iberia Lineas Aereas de Espana, Sociedad Anonima Operadora Co.*, No. 17-21168-CIV, 2019 WL 3804126, at *4 (S.D. Fla. Aug. 13, 2019) (finding, in a Montreal Convention case, that the plaintiff "bore the burden to prove his damages by a preponderance of the evidence"), *aff'd*, 811 F. App'x 559 (11th Cir. 2020). Plaintiffs contend they "need not prove their damages with the precision required at trial." Doc. #42. The issue, however, is Plaintiffs offer *no* evidence to support damages. For example, they provide no receipts, deposition testimony, photographs, or other documentation to demonstrate what was in their lost baggage or how much the baggage cost. Again, the onus is on Plaintiffs to "identify specific evidence in the record" and "articulate the

'precise manner' in which that evidence supports" their claim for damages. *Stults*, 76 F.3d at 656 (citing *Forsyth*, 19 F.3d at 1537). Plaintiffs do not do so and the lack of evidentiary support for their claim is fatal. *See Recif Res., LLC v. Juniper Cap. Advisors, L.P.*, 2020 WL 6748049, at *10 (S.D. Tex. Nov. 17, 2020) (holding that summary judgment is appropriate "[w]here the plaintiff provides no evidence of damages"). Their claim for lost baggage is dismissed.

### b. Deceptive Trade Practices Act

Count two of Plaintiffs' Complaint reads that "Defendants engaged in false, misleading, or deceptive acts or practices" in violation of Texas's Deceptive Trade Practices Act ("DTPA"). Doc. #1 ¶¶ 40–42. Defendants allegedly failed to refund Plaintiffs' airfares, compensate them for flight delays, compensate them for their baggage, and misrepresented the status of their claims. *Id.* ¶ 41. Defendants argue the DTPA claim is barred as a matter of law by the Airline Deregulation Act of 1978 (the "ADA").

The ADA prohibits a state from "enforc[ing] a law, regulation, or other provision . . . related to a price, route, or service of an air carrier." 49 U.S.C. § 41713(b)(1). "The Supreme Court has construed this provision broadly to preempt all state law claims that have 'a connection with or reference to' an airline's rates, routes, or services." *Adamore v. Sw. Airlines Corp.*, No. H-11-564, 2011 WL 6301398, at *3 (S.D. Tex. Dec. 15, 2011) (quoting *Morales v. TransWorld Airlines, Inc.*, 504 U.S. 374, 384 (1992)). On its face, then, Plaintiffs' DTPA claim appears to be preempted by the ADA.

Plaintiffs concede "preemption doctrine is indeed broad in airline cases" but nevertheless attempt to save their DTPA claim by casting it outside the scope of the ADA. Doc. #42 at 16–18. Specifically, they contend their DTPA claim concerns conduct that is "independent of and separate from" Defendants' services. *Id.* at 17. The Court disagrees. Plaintiffs cite no case law to support

9

their proposition and, moreover, the Fifth Circuit has indicated the ADA preempts state-law claims arising from customer service interactions. *Onoh v. Nw. Airlines, Inc.*, 613 F.3d 596, 600 (5th Cir. 2010) (rejecting an argument that a customer-service claim was "tenuous, remote, or peripheral" to an airline carrier's "provision of 'service'"); *see also Adamore*, 2011 WL 6301398, at *4 (finding that state law claims based on a carrier's rebooking, reticketing, and refunding decisions are preempted by the ADA). Plaintiffs' DTPA claim concerns Defendants' customer services and is thus preempted by the ADA. As such, Defendants are entitled to summary judgment on the DTPA claim.

### IV. Conclusion

In conclusion, Defendants' Motion for Summary Judgment is GRANTED IN PART. Specifically, summary judgment is granted with respect to Plaintiffs' claims for damaged and lost baggage, as well as their DTPA claim. Summary judgment is DENIED, however, with respect to Plaintiffs' delay claim under the Montreal Convention.

Additionally, Defendants' Motion for Judgment on the Pleadings (Doc. #34) is DENIED AS MOOT.

It is so ORDERED.

FEB 1 2 2026
Date

The Honorable Alfred H. Bennett
United States District Judge